## The Harrison National Bank, of Cadiz, Ohio, v. J. M. Votaw et al.

1. CORPORATION —*Liability of Stockholders—Evidence.* In order to charge persons as subscribers to the capital stock of a corporation, it must be shown that they subscribed to the stock of the particular corporation on account of which the liability is claimed, or that they have in some manner recognized their liability as such stockholders.

2. DEFENDANTS, *Not Liable as Stockholders.* The defendants signed a paper reading as follows: "We, the undersigned, agree to take the number of shares set opposite our respective names in the Douglass Sugar Company, said shares to be in the sum of $100 each," and placed opposite their respective names figures to represent the number of shares taken. Afterward, a corporation named the "Douglass Sugar Manufacturing Company," incorporated for 30 years, with 15 directors, and a capital stock of $100,000, divided into 1,000 shares, was formed. After the formation of this corporation, a new subscription list was made, and all purpose to organize under the original one abandoned. The second list was not signed by the defendants, and neither of them ever paid any assessment to this corporation, nor recognized his liability to it as a stockholder. *Held,* That, by merely signing said first paper, the defendants did not render themselves liable to creditors of the corporation as stockholders.

*Error from Butler District Court.*

ACTION by the *Harrison National Bank,* of Cadiz, Ohio, against the Douglass Sugar Company. Plaintiff had judgment, and, from an order denying its motion for execution against *J. M. Votaw* and others as stockholders of defendant corporation, plaintiff brings error. The material facts are stated in the opinion.

*Redden & Schumacher,* for plaintiff in error:

In support of the proposition that the court should have sustained our motion for an execution, we submit the following propositions and authorities:

*a.* The corporate existence begins when the charter is filed. *C. K. & W. Rld. Co. v. Comm'rs of Stafford Co.,* 36 Kas. 121; *St. L. Ft. S. & W. Rld. Co. v. Tiernan,* 37 id. 607.

*b.* A subscription is good though made before the charter of a company is obtained. 1 Mor. Corp., §§ 47, 50; Cook, Corp., 1st ed., § 67.

*c.* The subscription being absolute, no parol agreement concerning the same can change or modify it. Cook, Corp., §§ 81, 137, 138; 1 Mor. Corp., § 77; *Noble v. Callender,* 20 Ohio St. 199; *Manufacturing Co. v. Hale,* 39 Kas. 23; *Jewell v. Paper Co.,* 101 Ill. 58.

*d.* The fact that a portion of them made their stock payable in cane is immaterial, for that does not affect their double liability, and when a corporation becomes insolvent (as this one clearly was) the subscription becomes payable in cash. Cook, Corp., § 19.

*e.* The subscriber is liable though the stock has not been issued, for the stock was simply evidence of their rights and does not constitute their right or liability, and the company could be compelled to issue their stock upon demand. Cook, Corp., §§ 192, 210*n*; *Hawley v. Upton,* 102 U. S. 316.

M. W. Brown, L. E. Wright and D. P. Blood were three of the incorporators. An incorporator cannot question the

proceedings. *Sword v. Wickersham*, 29 Kas. 746; *Mining Co. v. Adams*, 35 id. 193; *Aultman v. Waddle*, 40 id. 195.

It has been held that a stockholder giving notice that he will not be bound avails nothing. Boone, Corp., § 277; Cook, Corp., 1st ed., § 75; *Snell v. Trustees of M. E. Church*, 58 Ill. 292. Drawing a line through his name certainly could not have any greater effect than giving formal notice to the other stockholders. See, also, Cook, Corp., 1st ed., § 73; *Johnson v. Plankroad Co.*, 16 Ind. 390; *Ryder v. Railroad Co.*, 13 Ill. 520; *Greer v. Railroad Co.*, 96 Pa. St. 391.

It would require the unanimous consent of the stockholders to release any stockholder. Cook, Stock and St., §§ 168, 169; *Newberry v. Burke*, 11 Wall. 96, 106. So strict is this rule, that a release by a corporate creditor of one shareholder from his proportion of the corporate indebtedness, will not operate to release the other shareholders. As to the third contention, Cook on Stockholders, § 173, states the law very clearly, that nonpayment of assessment does not cancel stock, and it follows that it does not release the stockholder.

We were entitled to an execution against the defendants. Cook, Stock and St., 1st ed., § 67; *Ginrich v. Patrons' Mill Co.*, 21 Kas. 61; *Ross v. Goldhill*, 19 Pac. Rep. 243; *Hawley v. Upton*, 102 U. S. 316; *Libbins v. Gunsell*, 48 N. W. Rep. 255; *Topeka Mfg. Co. v. Hale*, 39 Kas. 23; *Aultman v. Waddle*, 40 id. 195; *Porter v. Bagby*, 50 id. 412; Boone, Corp., § 108; Cook, Corp., §§ 52–54; 1 Mor. Corp., §§ 56, 59, 69, 73, 74.

*Shinn & Knowles*, and *W. A. Phipps*, for defendants in error:

The propositions of law stated in paragraphs *a, b, c, d*, and *e*, by counsel for plaintiff in error, are true only in a limited or qualified sense.

Assuming that in this case the change of the corporate name and the number of directors was made in compliance with law, who were the stockholders at the time such change was made? Evidently the subscribers to the new or second list

alone. They only were notified of the meeting at which such changes were made; were the only persons present at the meeting, and the only persons who took any action in the premises.

The authorities unanimously agree that a subscriber to the stock of a corporation may be released and discharged from liability thereon by the unanimous consent of the other subscribers, and, if this is done before the corporation has incurred the obligations sued on, is thereby released from any liability at the common law or under the statutes to such creditor. Mor. Corp., §§ 63, 119, 120, 151; Laws. Rights, Rem. & Pr., p. 757, § 455; Cook, Stock & St., §§ 167, 168, 169, and cases there cited; Field, Corp., § 89.

It was held in *Southern Hotel Co. v. Newman*, 30 Mo. 118, that defendant may show that the subscription list which he signed, and upon which liability is claimed, was annulled and abandoned by mutual consent and another opened and made basis of corporate organization. This last case is on all fours with the case at bar, and establishes what would seem to every mind to be a reasonable rule. See, also, *Alling v. Wenzell*, 35 Ill. App. 246; *Cook v. Chittenden*, 25 Fed. Rep. 545.

When nothing has been done toward the common object further than to file a charter, it would seem entirely reasonable that, if a majority in number and amount of the original subscribers desired to abandon any further pursuit of that object, but the minority wished to still proceed, that the minority, with the consent of the majority, could reorganize on the basis of an entirely new membership, and use the original charter as a basis, and all not taking part in the new membership and organization be absolved from all responsibility and liability.

We have examined many of the authorities cited in the brief of counsel for plaintiff in error, and find the facts upon which those decisions were rendered to be so different from the case at bar as to render them of no force in this case.

The opinion of the court was delivered by

ALLEN, J.: Plaintiff in error, as plaintiff below, obtained a judgment against the Douglass Sugar Company. Execution was issued on this judgment, and duly returned unsatisfied. Thereafter, plaintiff filed a motion and served proper notice on the defendants in error for the purpose of obtaining execution against them as stockholders in said corporation. The court, after hearing the evidence, made special findings of fact and conclusions of law, and overruled said motion. We are called on to review this action of the court.

It appears from the findings, that in the fall of 1887 the people of Douglass and vicinity were desirous of establishing a sugar manufactory, and a subscription paper was circulated, the heading of which reads as follows: "We, the undersigned, agree to take the number of shares set opposite our respective names in the Douglass Sugar Company, said shares to be in the sum of $100 each." The defendants, with others, subscribed for various numbers of shares respectively, amounting in all to 215 shares. Afterward, on the 10th of October, 1887, the defendants L. E. Wright, D. P. Blood and others executed, acknowledged and filed a charter for the incorporation of the Douglass Sugar Manufacturing Company, with a capital stock of $100,000, divided into 1,000 shares, and naming Wright and Blood, with 13 others, as directors. At a meeting participated in by the general public, defendant L. E. Wright was elected vice president, and defendant D. P. Blood, treasurer, but none of the persons elected at that time ever qualified or assumed the duties of their respective offices, nor did L. E. Wright or D. P. Blood ever qualify as directors, or act as such. Wright, however, with two other subscribers, acted on a committee to select a site for the sugar company's mill, and examined the land that was afterward purchased by the company. Nothing further of importance was done until some time in February, 1888, when another meeting of the citizens of Douglass and vicinity was held, at which the question as to the legality and advisability of the

township of Douglass taking stock in the company was discussed. It being the sentiment that the township could not legally take stock in the enterprise, it was determined to take steps to reorganize the company on the basis of a revised membership, and a new subscription list was prepared and signed by various persons, most of whom were subscribers to the original list, but not in every case for the same number of shares. The heading of this list reads as follows:

" We, the undersigned, do subscribe the following amounts set opposite our names to the capital stock of the Douglass Sugar Manufacturing Company, of Douglass, Kas., which stock we agree to pay in assessments not to exceed 20 per cent. each 30 days until said stock is fully paid up; each share of stock amounting to $100. Cane subscriptions to be paid not less than 25 per cent. of crop raised in stock."

The whole number of shares subscribed on this paper appears to be 56. Afterward, on the 13th day of March, 1888, a meeting of the subscribers to the second subscription paper was held, and by a vote of such subscribers an amendment to the charter was authorized changing the name from Douglass Manufacturing Company to the Douglass Sugar Company, and the number of directors from 15 to 9, and a proper certificate of the change was duly filed with the secretary of state. This meeting was not attended by any of the subscribers to the original subscription paper except those who also were subscribers on the new, and no notice of the meeting was given to them. It does not appear that any of the defendants ever participated any further in the transactions of the corporation, and none of them ever subscribed for stock therein after the filing of the charter, nor made any payment to the company on account of any subscription.

Several questions were discussed by counsel for plaintiff in error in his oral argument, and also in the brief. We think, however, the only matter necessary to be noticed is the force and effect of the subscription paper, under which it is claimed the defendants are liable as stockholders. For the purposes of this case, it may be conceded that a valid subscription to

the capital stock of a corporation can be made before the filing of the charter; but is this a subscription to the capital stock of a corporation to be known as the Douglass Sugar Manufacturing Company, to exist for 30 years, with 15 directors as named in the charter afterwards filed, and with a capital stock of $100,000, divided into 1,000 shares? The paper signed names the Douglass Sugar Company, and fixes the amount of each share at $100, but does not fix the amount of the capital stock, nor any other of the essential particulars necessary to be stated in the charter of a corporation. Had this indefinite subscription been followed up by payments from the subscribers to the Douglass Sugar Manufacturing Company of installments based on the number of shares of of stock by them subscribed, and by a participation on the part of the subscribers in the operations of the company, showing the recognition on their part of their liability as stockholders, it might well be held that any informality in the manner of subscribing the stock would be cured, and the defendants be liable; but in this case it affirmatively appears that the organization of the company on the basis of this first subscription list was abandoned. Counsel complain that on the hearing the court admitted much incompetent evidence for the purpose of showing this abandonment; that witnesses were permitted to testify with reference to their understanding. It may be that in some instances the strict rules governing the admissibility of evidence were disregarded, but we are unable to see how the errors, if any, were materially prejudicial to the plaintiff. It was necessary for the plaintiff to do more than introduce this original subscription list. On the face of this paper, no liability whatever on the part of the defendants to the Douglass Sugar Manufacturing Company is shown. There is nothing in the paper itself to identify the Douglass Sugar Company with the corporation designated as the Douglass Sugar Manufacturing Company, and the only way in which the defendants could possibly be charged thereunder would be by showing that, as a matter of fact, the subscription was intended to be to the corporation

afterwards formed.   The testimony received by the trial
court not only fails to show that fact, but does affirmatively
show an abandonment of the project, so far as these defendants
were concerned.   It cannot be doubted for a moment that
parties contemplating the organization of a corporation can
abandon the project at any stage of the proceedings prior to
the creation of any liability to outside parties, and in this case
we think it clear that they did so abandon the project, and
also that the fact of such abandonment was fully recognized
and understood by those who became subscribers to the new list
and participated in the actual operations of the corporation.
The defendants, never having become liable to the corporation
as stockholders, are of course not liable to its creditors as such.
The change of the corporate name, so as to make it identical
with the name contained in the first subscription paper, could
not of course affect the liability of the defendants, having
been made without their knowledge or consent.   While we
agree with counsel for the plaintiff in error on most of the legal
propositions presented by him, we are unable to see that they
are material in this case, for the reasons before stated.

Complaint is also made to the ruling of the court on plain-
tiff's motion to retax costs in said action.   We find noth-
ing in the record but plaintiff's motion and the ruling of
the court thereon.   There is not even a copy of the fee
docket, unless we assume that it is correctly copied in plain-
tiff's motion.   This we think unwarranted.   The overcharge
claimed is but trifling, and we find nothing to challenge our
investigation in that respect.

The order of the district court will be affirmed.

All the Justices concurring.